IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

YVONNE LACOUNT,      )
                              )
        Plaintiff,        )
                              )
v.                        )
                              )     CASE NO. 1:12-CV-03323-AT
WAL-MART STORES, INC.,   )
                              )
        Defendant.     )
_____)

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SPOLIATION OF EVIDENCE AND THE IMPOSITION OF SANCTIONS

COMES NOW Yvonne LaCount (hereinafter "Plaintiff"), Plaintiff in the above-styled action, by and through undersigned counsel, and files this Motion for Spoliation of Evidence and the Imposition of Sanctions against Defendant, Wal-Mart Stores, Inc.  (hereinafter "Wal-Mart").

### INTRODUCTION

This premises liability case arises from an incident on January 21, 2011 at the Wal-Mart store located in Gainesville, Georgia where Plaintiff slipped and fell sustaining serious personal injuries.  The Gainesville Wal-Mart has a main aisle around the store that Wal-Mart calls "action alley."  Plaintiff fell on action alley.  Wal-Mart produced a floor plan schematic that identified the location of the video

surveillance cameras throughout the store.  Three (3) cameras were identified on that schematic that pointed in the vicinity or direction of the fall.  After the exhaustive discovery efforts described below, it is clear that Wal-Mart either destroyed or failed to preserve all video footage of action alley around the time of Plaintiff's fall as well as the Wal-Mart video request form regarding this incident.

Wal-Mart's failure to retain the video data footage and associated video request form was done in bad faith to avoid production of adverse evidence.  The evidence in the record demonstrates Wal-Mart failed to follow its own procedures for reviewing and retaining video data after a reported injury accident.  Plaintiff deposed five (5) Wal-Mart witnesses who all testified that no video data had been preserved or reviewed.  This testimony is either false or, if true, in direct violation of specifically identified Wal-Mart policies.  Plaintiff has been prejudiced by Wal-Mart's actions, and Defendant's conduct during discovery was intended to delay and ultimately thwart Plaintiff's efforts to obtain this important discoverable information.  Wal-Mart's pattern of discovery abuse in similar litigation suggests Wal-Mart's actions in this case amount to bad faith spoliation of evidence.

## PROCEDURAL AND FACTUAL BACKGROUND

On January 21, 2011, Yvonne LaCount, her husband and son entered the Wal-Mart located in Gainesville, Georgia through the general merchandise doors.

(Deposition of Yvonne LaCount attached hereto as Exhibit "A", p. 109, lines 7-10). After selecting merchandise in the health and beauty aisle, Plaintiff and her family proceeded walking down the main aisle called "action alley" towards the grocery department on the other end of the store. (LaCount Depo., pp. 110-111, lines 13-25 and 1-3;p. 114, lines 1-25; Deposition of Ricky Allen attached hereto as Exhibit "B", p. 48, lines 3-9). Plaintiff slipped and fell on action alley just before it intersects with the grocery entrance area. (LaCount Depo., pp. 115, lines 14-16). Plaintiff testified she slipped and fell after stepping in or on a clear liquid puddle with a wipe in it. (LaCount Depo., p. 124, lines 10-19). Plaintiff believed the puddle was dishwashing soap. (LaCount Depo., p. 151, lines 2-23).

Plaintiff promptly reported her fall to an employee in the area. (LaCount Depo., p. 140, lines 5-14). The employee reported the fall to the manager. (LaCount Depo. p. 142, lines 7-13). While waiting for the manager, an employee came to the scene to put down cones, taped off the area, and photographed the scene. (LaCount Depo. p. 142, lines 7-13; Allen Depo., p. 31, lines 18-23; Photographs of the area of fall attached hereto as composite Exhibit "C"). The manager took written statements from Plaintiff and her husband, Shane LaCount, and prepared an accident report. (LaCount Depo., p. 142, lines 17-23; Allen Depo., pp.27-28, lines 20-25 and 1-25; Statements attached hereto as Exhibit "D").

Wal-Mart has specific accident investigation policies and procedures. (Wal-Mart Emergency Procedures attached hereto as Exhibit "E"; and Customer Incidents attached hereto as Exhibit "F"). These policies require an investigation, statements to be taken, a report prepared, photographs to be taken, and video reviewed and secured. (Exhibits "E" and "F"). In fact, Wal-Mart facilitates compliance with its procedures by providing each store with an accident folder containing all the necessary forms for conducting the required investigation. (*See* Deposition of Sherry Summerour attached hereto as Exhibit "G", p. 18, lines 6-19; Allen Depo. p. 44, lines 12-25). The forms contained in the accident folder track Wal-Mart's customer incidents and injury accident policies. (*See* Deposition of Christopher Lewis attached hereto as Exhibit "H", p. 21, lines 3-23; and Deposition of Brian Gregory attached hereto as Exhibit "I", pp. 19-24).

One of Wal-Mart's injury accident procedures is for the manager on duty at the time of the incident to submit a video request form to Asset Protection so that Wal-Mart can "secure video of the incident occurring, incident scene prior to incident and incident scene after incident." (Allen Depo., p. 44, lines 12-25; Exhibit "F", p. 2 of 4, bullet point 3). During discovery, information regarding the cameras and video footage was requested in Plaintiff's First Interrogatories to Defendant and First Request for Production of Documents. (Plaintiff's First

Interrogatories and First Request for Production of Documents are attached hereto as Exhibits "J" and "K", respectively).  Specifically, Plaintiff's First Interrogatories numbers thirteen (13) and (14) and Plaintiff's First Request for Production number five (5) requested information pertaining to Wal-Mart's video retention policies as well as for the production of any video data related to the incident.  (Exhibits "J" and "K").

Defendant's initial responses to Plaintiff's discovery were unresponsive and did not supply Plaintiff with the necessary information.  Plaintiff then served Defendant with a Rule 37.1 letter attempting to resolve the discovery dispute. (Plaintiff's December 4, 2012 Rule 37.1 Letter is attached hereto as Exhibit "L"). Defendant supplemented its initial responses denying the existence of video footage and asserting privileges that required the parties to enter into a Consent Protective Order for any additional production and responses.  (Defendant's Supplemental Responses to Plaintiff's First Interrogatories and First Request for Production is attached hereto as Exhibit "M").  After Plaintiff agreed to entering the Consent Protective Order, Wal-Mart produced various documents and information referenced in its prior responses.[1]  The initial production included

---

[1] The Exhibits attached hereto do not include any "Confidential" information that merit sealing under this Court's specific sealing guidelines articulated in the *Guidelines to Parties and Counsel in Cases Proceeding Before the Honorable Amy Totenberg*, specifically Section III (e), pp. 20-21.

Wal-Mart's policies as well as a schematic of the store which included video camera locations; however, Wal-Mart failed to provide the completed video request form, verification that the video data was reviewed on the date of the incident, or any exemplars of the video camera shots.  (Exhibit "M").

Plaintiff requested the necessary exemplars and scheduled depositions of Wal-Mart's identified witnesses.  Plaintiff had not received any exemplars seven (7) days prior to the February 12, 2013 scheduled depositions, so Plaintiff sent another 37.1 discovery dispute letter seeking the exemplars prior to the deposition. (Plaintiff's February 7, 2013 Rule 37.1 Letter is attached hereto as Exhibit "N"). In response, Defendant produced a set of fifteen (15) still shots of various cameras in the subject store.  (Defendant's February 7, 2013 letter with included exemplar photographs attached hereto as composite Exhibit "O").   After receipt of the exemplar photographs, Plaintiff moved forward with the depositions.

On February 12, 2013, Plaintiff deposed the following Wal-Mart personnel identified by Wal-Mart as persons with knowledge of the events or Wal-Mart's injury accident procedures: Ricky Allen and Brian Gregory, store managers of the subject store, and Christopher Lewis and Justin Holloway, asset protection agents assigned to the subject store.  Plaintiff inquired into each of these employees' knowledge of the incident, Wal-Mart's injury accident policies and procedures,

6

and to specifically determine the location of the cameras and the video data relevant to the incident.   (Exhibits "B", "H", "I", and Deposition of Justin Holloway attached hereto as Exhibit "P").

These deponents testified there was no video request form in this file and no one recalled submitting a video request form despite it being a portion of the accident folder.  (Allen Depo., pp. 44-46, lines 12-25, 15-25 and 1-14; Gregory Depo., p. 34, lines 18-21; and Lewis Depo., p. 20, lines 16-24).  The deponents also testified no one looked at the video and that no video was downloaded because the cameras did not capture the area of Plaintiff's fall, even though no one looked at the data.  (Allen Depo., pp. 45-46, lines 15-25 and 1-14; Gregory Depo., p. 34, lines 18-21; Lewis Depo., p. 18, lines 16-23; and Holloway Depo., p. 14, lines 10-13).  Contrary to this testimony, Plaintiff testified there was a camera in the approximate vicinity of her fall.  (LaCount Depo., pp. 153-154, lines 15-25 and 1-4).

During the depositions, Plaintiff introduced the store schematic so that the witnesses could identify the video cameras and the area of the fall. (Wal-Mart Schematic attached hereto as Exhibit "Q").  Lewis explained that the circles on the schematic indicated camera location and the arrows coming off the circles indicated camera direction.  (Lewis Depo., pp. 14-15, lines 19-25 and 21-24).

Lewis testified Plaintiff fell in the area of the watermark "M" on the schematic. (Lewis Depo., pp. 18-19, lines 16-25 and 1-7)  Lewis further testified no camera captured the fall.   Lewis also testified no cameras had been moved since a remodel of the store in 2007 or 2008.  (Lewis Depo., pp. 18, lines 16-25).   Holloway supplemented this testimony by identifying the video cameras closest to Plaintiff's fall.  (Holloway Depo. pp. 11-14; Schematic with Identification attached hereto as Exhibit "R").   All these Wal-Mart witnesses testified that no video data had been preserved or reviewed in violation of Wal-Mart policy.

The Wal-Mart witnesses' inability to identify who was responsible for submitting the subject video request form, reviewing the video footage of the incident, and providing the downloaded footage to the central claims office calls into question whether the evidence in this case was mistakenly not preserved or intentionally destroyed to avoid production.  Allen and Gregory testified that Asset Protection is responsible for video review and that the video request form is to be submitted to them so that the data could be sent to claims with the rest of the accident folder.  (Allen Depo., pp. 44-45, lines 12-25 and 1-7; Gregory Depo., pp., 18-19, lines 13-25 and 1-12).  Lewis explained the process of receiving a request for downloading video but stated he was not sure of the policy because he had never been requested to download any video pertaining to an accident.  (Lewis

Depo., pp. 21-24, lines 5-25, all, all and 1-4). Lewis further testified that managers, assistant managers, and the Asset Protection Manager, know how to the work the cameras and pull video data for downloading. (Lewis Depo., pp. 22 and 24, lines 1-17 and 3-10).

According to the deposition testimony of Wal-Mart's identified witnesses, no video pertaining to the incident was ever reviewed or preserved. However, the inconsistencies in these testimonies paired with the missing video request form suggests the video may have been reviewed and then the video and request form have subsequently been destroyed, not retained or withheld from production. In order to further explore these issues, Plaintiff conducted further discovery regarding the cameras and the video retention policy.

By comparing the exemplar photographs to the schematic, it became readily apparent that there were cameras in the store on the aisle where Plaintiff fell that may have either captured the incident, Plaintiff approaching the area where she fell, and/or the last Wal-Mart employee in the area. (See Exhibit "R"). A camera on that aisle also could have captured how the foreign substance ended up on the floor and how long it remained there prior to Plaintiff's fall. Therefore, Plaintiff sent another 37.1 discovery dispute letter to Wal-Mart seeking additional information regarding the video request form and the cameras identified in the

depositions.  (Plaintiff's February 13, 2013 Rule 37.1 Letter is attached hereto as Exhibit "S").

Defendant never provided any additional information or a copy of the video request form.  Defendant, did however, produce additional exemplars of the cameras located at the opposite end of action alley.  (Defendant's May 21, 2013 letter with included exemplar photographs attached hereto as composite Exhibit "T").  After review of the additional exemplars, it was apparent that the first additional exemplar was the same as the previously produced action alley photograph.  (*See* Exhibits "O" and "T").  The second additional camera exemplar provided a shot pointed up the Dickey's aisle instead of the direction indicated on the schematic—pointing in the direction of the incident.  (See Exhibits "R" and "T").  The orientation of the two additional exemplars contradicted deposition testimony that no camera had been moved and that no camera captured the area of the fall.

Defendant's counsel indicated that that the previously produced exemplars already contained shots of all the cameras in the area of the fall and that the camera shot showing the Dickey's aisle had been moved from pointing in the direction of Plaintiff's fall to capture a high theft area.  (E-mail from Defense Counsel attached hereto as Exhibit "U").  This statement contradicted sworn testimony by Lewis that

the cameras had not been moved. (Lewis Depo., pp. 18-19, lines 16-25 and 1-7). The first additional exemplar depicted the same vantage point of the previously produced action alley shot produced on February 7, 2013. The other exemplar demonstrated a camera had been moved despite testimony to the contrary, and Plaintiff still had not received an exemplar of the camera closest to the area of her fall.

Accordingly, Plaintiff sought an extension of the discovery period to obtain the deposition of the Asset Protection Manager for the subject store, Sherry Summerour.  Summerour testified she had no knowledge of the incident, and that she had not received a video request form or reviewed any video that may have been relevant to the fall.  (Summerour Depo., pp. 17-20 and 25-27, lines 7-25, 6-25, 1-25 and 1-22).  Summerour's testimony contradicted Allen and Gregory when she testified that Asset Protection is not necessarily responsible for pulling the video because numerous people have access to the cameras and had received training on how to review and download incidents.  (Summerour Depo., pp. 19-20, lines 18-25 and 1-22).  Summerour avers that she will review video if given a video request form, but she then later testified that the video request form was not included in 2011 accident folders.  (Summerour Depo., pp. 17 and 20, lines 17-25, and 9-22).  The policies and procedures produced by Defendant demonstrate that

the video retention policy was, indeed, in effect at the time of the incident. (*See* Exhibit "E" and "F").  Thus, Summerour's testimony regarding this critical issue of whether a video request form is included in an accident folder was false.  If her testimony is to be believed, no one at Wal-Mart was responsible for seeing that the video in this case was examined or preserved.  This would be a direct violation of Wal-Mart's specific policies and procedures, which were otherwise followed to the letter after this incident.

Summerour's testimony also included syncing the exemplars to the cameras indicated on the schematic.  During her testimony, she was able to identify each camera associated to each exemplar produced.  (Summerour Depo., pp. 32-44).  After completing the identification process, the only exemplar not provided—after Plaintiff's numerous attempts to obtain this exemplar—was the camera closest to Plaintiff's fall.  (Summerour Depo., pp. 44-45, lines 17-22 and 2-17).  Subsequently, Wal-Mart produced the missing exemplar purportedly depicting the approximate area of the fall.  (Exemplar photograph of area closest to the fall is attached hereto as Exhibit "V").

Following Plaintiff's fall, Wal-Mart followed every accident investigation policy except the video review and retention policy.  The facts provided *supra* leave little doubt that the video request form was in the accident folder. Wal-

Mart's accident investigation policy required its employees to review and download whatever video data was available relevant to the fall, the time preceding the incident, and the time immediately after the incident.  (*See* Exhibits "E" and "F").

The video policy required Wal-Mart personnel to "secure video of the incident occurring, incident scene prior to incident and incident scene after incident." (Exhibit "F").  The delay in providing information regarding the video cameras and the complete failure to produce a video request form constitutes spoliation of evidence.   Several cameras identified on the schematic and represented by exemplars surely would have captured relevant data regarding the hazardous condition, the length of time it was on the floor, the last inspection by a Wal-Mart associate, and Plaintiff's fall.  The Wal-Mart witnesses' testimony that no camera captured the area of the fall is an impossible assumption without someone reviewing the video to verify such an assertion was accurate.  Plaintiff testified a camera was in the area of her fall.  No exemplar of that camera was provided until after deposition testimony exposed it had not been produced.

The only logical explanation for the failure to preserve the video and the delay in providing the evidence regarding the cameras is that Wal-Mart destroyed or failed to preserve evidence adverse to their defense.  Wal-Mart may argue that

its employees violated company policy and that the delays in production were innocent misunderstandings of what Plaintiff sought during discovery. That argument fails because Wal-Mart's pattern of discovery abuse in state and federal court as outlined below eviscerates any such presumption in Wal-Mart's favor.

### HISTORY OF DISCOVERY ABUSE

Wal-Mart's discovery abuse tactics cannot be ignored when considering the spoliation of evidence in this matter. Unfortunately, Plaintiff's experience during the discovery of this case is not unique. Wal-Mart's notorious history of discovery abuse and spoliation of evidence can be found throughout every district court in the country. The following cases are just a sample of Wal-Mart's discovery abuses:

1.    Wal-Mart Stores, Inc. v. Lee, 659 S.E. 2d 905 (Ct. App. Ga. 2008) (Wal-Mart sanctioned for spoliation of video surveillance data because Wal-Mart allowed relevant video surveillance to be recorded over. The trial court's sanction of excluding evidence pertaining to portions of the surveillance that would have contradicted plaintiff's testimony was upheld on appeal.)

2.    Flowers v. Wal-Mart Stores, Inc., 2005 WL 278101 (M.D. Ga. 2005) (Wal-Mart sanctioned with adverse inference charge for spoliation of evidence when store manager destroyed the ladder involved in plaintiff's

fall.)

3.  <u>Martino v. Wal-Mart Stores, Inc.</u>, 908 So. 2d 342 (Fla. 2005) (Wal-Mart sanctioned for spoliation of evidence for destruction of video surveillance and shopping cart involved in an injury accident.  Court imposed the rebuttable presumption charge as the appropriate sanction.)

4.  <u>Davis v. Wal-Mart Stores, Inc.</u>, 756 N.E. 2d 657 (2001) (New trial ordered because Wal-Mart withheld evidence and several employees provided false and misleading testimony.)

5.  <u>Haid v. Wal-Mart Stores, Inc.</u>, 2001 WL 1819193 (D. Kan. 2001) (Wal-Mart sanctioned for making inappropriate objections to discovery and not complying with discovery rules regarding privileges when Wal-Mart refused to produce claim documents sent to Wal-Mart's claims office.)

6.  <u>Wal-Mart Stores, Inc. v. Christ</u>, S.W. 3d 2001 (Ct of App., Texas) (Wal-Mart sanctioned for failing to produce hand-written incident report until eight days before trial.)

7.  <u>Wilson v. Wal-Mart Stores, Inc.</u>, 199 F.R.D. 207 (U.S. D. Ct. S.D. Tex 2001) (Wal-Mart sanctioned for numerous discovery abuses that the court found to be "at best, grossly inappropriate." The court continued,

"[u]nfortunately, nefarious conduct is all too common in lawsuits in which Wal-Mart is a party".)

8.      Kopin v. Wal-Mart Stores, Inc., 200 A.D. 2d 937 (S. Ct. 4th Div. NY 2002) (Wal-Mart's answer struck for "willful and contumacious" discovery abuse in failing to comply with two court orders and unreasonable delay in production of evidence.)

9.      Miles v. Wal-Mart Stores, Inc., 2007 WL 3390481 (W.D. Ark 2007) (Plaintiff sought sanctions for spoliation of evidence for destruction of video surveillance in a violation of the Sarbanes-Oxley Act where Wal-Mart allegedly retaliated against plaintiff for refusing to shred sensitive documents).

10.     McDonald v. Wal-Mart Stores, Inc., 2008 WL 153783 (E.D. Va. 2008) (Wal-Mart sanctioned with adverse inference charge for spoliation of evidence when Wal-Mart destroyed plastic wrap that plaintiff allegedly slipped on).

11.     Stoner v. Wal-Mart Stores, Inc., 2008 WL 3876077 (C.C. Ill. 2008) (Court denied Wal-Mart's motion to dismiss plaintiff's negligent spoliation of evidence claim because Wal-Mart only preserved video surveillance of plaintiff after her fall and did not retain any other potentially relevant

footage.)

12.     <u>Robbins v. Wal-Mart Stores, Inc.</u>, CAFN 98-1239 (C.D. Ill. May 26,

2000) (Wal-Mart was sanctioned for taking seven months to produce an

illegible copy of its contract with a gun manufacturer and for not producing a

copy of its gun display policies after a child is shot by another boy playing

with a gun at the gun display).

The foregoing examples provide only a small glimpse into Wal-Mart's

consistent pattern of discovery abuse and spoliation of evidence.  Wal-Mart may

allege that the failure to follow policy and the failure to retain the video

surveillance was an innocent mistake because the employees believed that no

camera captured Plaintiff's fall.  Plaintiff's response to such an argument is that

there is no such thing as an innocent mistake where Wal-Mart is concerned.  Wal-

Mart delayed producing relevant documents and completely failed to produce

others. Wal-Mart's witnesses provided inconsistent, misleading and false

testimony.  No video surveillance data was produced.  These are precisely the

types of abuses found in the cases outlined *supra*.  Wal-Mart consistently destroys

or fails to retain relevant evidence in premises liability cases, primarily video

surveillance data.

In the instant case, Wal-Mart asserts that no camera captured the fall, but admits no one reviewed the video.  The video request form is included in the accident investigation folder.  This form is missing.  No one admits to being responsible for filling it out or turning it over to any individual or department. The schematic indicates at least three (3) cameras could have captured the fall or other relevant information related to the incident.  Wal-Mart's explanation was that neither of the action alley cameras captured the fall and that the other action alley camera was moved to capture high theft areas after sworn testimony was given that no cameras had been moved since the remodel in 2007 or 2008.  Finally, Wal-Mart never produced the exemplar of the camera closest to the area of the fall until Plaintiff ferreted out it was a missing exemplar.  These issues cannot be dismissed as mere coincidence because there are no coincidences when it comes to Wal-Mart. The only conclusion that can be reached regarding the failure to provide the video surveillance data and video request form is spoliation of evidence.

## ARGUMENT AND CITATION OF AUTHORITY

"Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Graff v. Baja Marine Corp., 310 Fed. Appx. 298, 301 (11th Cir. 2009).  Federal courts have broad discretion to impose spoliation sanctions

against litigants as part of their inherent power to manage their own affairs. Stanfill v. Talton, 851 F.Supp.2d 1362 (M.D. Ga. 2012). The party seeking sanctions for spoliation of evidence bears the burden of proof. Id.

A plaintiff, as the party seeking spoliation sanctions, must prove that (1) the missing evidence existed at one time; (2) the spoiling party had a duty to preserve the evidence; and (3) the evidence was crucial to the plaintiff being able to prove his or her prima facie case. Walter v. Carnival Corp., No. 09–20962–CIV, 2010 WL 2927962, at *2 (S.D. Fla. July 23, 2010). In some cases "a party's failure to preserve evidence rises to the level of sanctionable spoliation 'only when the absence of that evidence is predicated on bad faith,' such as where a party purposely loses or destroys relevant evidence." Id. at *2 (quoting Bashir v. Amtrak, 119 F.3d 929, 931 (11th Cir.1997)). A finding of bad faith is not required, however, under the most recent interpretations of spoliation by the Eleventh Circuit. See Stanfill v. Talton, 851 F.Supp. 2d 1362 (M.D. Ga. 2012); Woodard v. Wal–Mart Stores East LP, 801 F.Supp.2d 1363, 1372 (M.D.Ga.2011).

In Flury v. Daimler Chrysler Corp., 427 F.3d 939 (11th Cir. 2005), the Eleventh Circuit held that federal law governs the imposition of sanctions in diversity jurisdiction cases because "spoliation sanctions constitute an evidentiary matter." 427 F.3d at 944. The court, however, relied on Georgia state spoliation

law for "guidance" due to the lack of specific federal precedent. Id. As noted, the Eleventh Circuit in Flury looked to Georgia law for guidance in defining the elements of spoliation and, in the process, arguably diminished the role of bad faith in a spoliation analysis. Stanfill v. Talton, 851 F.Supp. 2d 1362 (M.D. Ga. 2012).

In AMLI Residential Props., Inc. v. Ga. Power Co., 293 Ga. App. 358, 667 S.E. 2d 150 (2008), the Georgia Court of Appeals held that spoliation sanctions may be appropriate even when the spoliator has not acted in bad faith. Stanfill, 851 F. Supp. 2d 1363. Nevertheless, the relative culpability of the parties is important. The court contrasted, on the one hand, " 'the accidental, random, or unintended dissipation of evidence by persons having no interest in its preservation,' " with, on the other hand, those cases in which " 'a party knowledgeable of litigation strategy, tactics, and policies ... acted unfairly to preclude the opportunity of an adversary to be apprised of the existence of a defense to a plaintiff's claims.' " Id. citing AMLI, 293 Ga. App. at 363, 667 S.E.2d at 155 (quoting N. Assurance Co. v. Ware, 145 F.R.D. 281, 284 (D.Me.1993)). Thus, while bad faith is a factor to consider, the Eleventh Circuit has moved away from it being a necessary requirement. Stanfill, 851 F. Supp. 2d 1363.

In determining the propriety of spoliation sanctions, the Eleventh Circuit has instructed the district courts to consider the following factors: (1) prejudice to the

non-spoiling party as a result of the destruction of evidence, (2) whether the prejudice can be cured, (3) practical importance of the evidence, (4) whether the spoiling party acted in good or bad faith, and (5) the potential for abuse of expert testimony about evidence not excluded. Flury v. Daimler Chrysler Corp., 427 F.3d 939, 945 (11th Cir. 2005). An examination of these factors indicates that bad faith is a factor but necessarily a requirement.

Applying the facts of this case to the tests discussed above satisfies Plaintiff's burden of proof for the imposition of sanctions for spoliation of evidence. (1) The video surveillance existed at the time of her fall and the video request form is included in every accident investigation package. (2) Wal-Mart's own internal accident investigation policy required that the video surveillance be preserved. (3) The evidence was critical to proving Plaintiff's prima facie case because the video surveillance from the cameras in the immediate vicinity would have been able to establish Wal-Mart's constructive knowledge of the hazard as required by Georgia law. *See* Robinson v. Kroger, 268 Ga. 735, 493 S.E. 2d 403. (1997).

The pattern of discovery abuse perpetrated by Wal-Mart demonstrates bad faith. There are no coincidences where Wal-Mart is concerned. The inconsistent and misleading testimony of the witnesses as to whether or not a camera captured

the relevant information regarding the incident suggests spoliation of evidence. The missing video request form and the alleged failure of anyone to review and download the video is in direct violation of Wal-Mart's written accident investigation policy and proves spoliation of evidence.  The unreasonable delay and subterfuge in producing accurate exemplars demonstrates bad faith discovery abuse.  Thus, the three (3) primary elements of spoliation of evidence are satisfied.

The additional factors adopted by the Eleventh Circuit are also present:  (1) Plaintiff is prejudiced as a result of the destruction of evidence because the video surveillance may have demonstrated the length of time the hazard was on the floor, may have shown the time of the last inspection by an employee, and the severity of Plaintiff's fall may have corroborated her description of her injuries. (2) The prejudice cannot be cured because no one was an eyewitness to the incident and Wal-Mart does not keep inspection logs. (3) The practical importance of the evidence is clear: the video surveillance could establish or disprove Wal-Mart's negligence.  (4) Wal-Mart acted in bad faith because the pattern of Wal-Mart's behavior in premises liability litigation establishes that Wal-Mart destroys or fails to maintain adverse evidence in these cases—especially video surveillance.  (5) Finally, the potential for abuse is present because a witness may aver Wal-Mart

had no constructive knowledge of the hazard because the missing video cannot contradict such a position.

Ultimately, the trial court judge is afforded broad discretion in determining whether to impose spoliation sanctions. Id. at 944. Appropriate sanctions may include an adverse judgment, the denial of a defendant's motion for summary judgment, issuing jury instructions that raise a presumption against the spoliator, or the exclusion of evidence. Id. at 945; Connor v. Sun Trust Bank, 546 F.Supp. 2d 1360, 1375 (N.D. Ga. 2008); Brown v. Chertoff, 563 F.Supp. 2d 1372, 1381 (S.D. Ga. 2008).  Because the evidence outlined above substantially satisfies all the criteria for spoliation of evidence in the Eleventh Circuit, the appropriate sanction for Wal-Mart's spoliation in this case is a jury instruction that raises a rebuttable presumption against Wal-Mart that the destroyed data would have been harmful to it, and the denial of any potential forthcoming motion for summary judgment.

Wal-Mart failed to preserve and failed to produce, the video data from the cameras on "action alley" that capture the aisle of Plaintiff's fall, as well as the video data from the camera closest to Plaintiff's fall. Wal-Mart failed to produce the video request form that was part of the accident folder.  The facts and circumstances surrounding the failure to preserve and produce the video surveillance indicates Wal-Mart destroyed or failed to preserve evidence adverse to

its defense of this case.  As such, this Court has the broad discretion to impose the appropriate sanction of denying any potential forthcoming summary judgment and charging the jury with the rebuttable presumption that Wal-Mart's spoliation of evidence indicates the video surveillance and missing video request form would have been adverse to Wal-Mart's defense.

WHEREFORE, Plaintiff prays this Court sanction Wal-Mart for spoliation of evidence along with such further relief that this Court deems just and proper.

This 29th day of July, 2013.

Respectfully submitted,

/s/ Robert M. Hammers, Jr.
Jason  T. Schneider
Georgia Bar Number 629549
Robert M. Hammers, Jr.
Georgia Bar Number 337211

JASON T. SCHNEIDER, P.C.
6111D Peachtree Dunwoody Road
Atlanta, Georgia  30328
(770) 394-0047

/s/ Kathy Edwards-Opperman
Kathy Edwards-Opperman
Georgia Bar Number 241460
Attorney for Plaintiff

MONTLICK & ASSOCIATES, P.C.
17 Executive Park
Suite 300
Atlanta, Georgia 30329
(404) 235-5000

## CERTIFICATE OF COMPLIANCE & SERVICE

This is to certify that I have complied with the Local Rules for the Northern District of Georgia - Atlanta Division - in submitting this filing and have this day served all parties with a copy of the within *Plaintiff's Brief in Support of Motion for Spoliation of Evidence and the Imposition of Sanctions* via the CM/ECF electronic filing system and addressed to the following:

Albert J. DeCusati
Ashley Bagiatis
McClain & Merritt
3445 Peachtree Road, Suite 500
Atlanta, Georgia 30326

This the 29th day of July, 2013.

/s/ Robert M. Hammers, Jr.
_____

Jason T. Schneider
Georgia Bar No. 629549
Robert M. Hammers, Jr.
Georgia Bar No. 337211
Attorneys for Plaintiffs